UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT LUEDECKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-1582-B |
| | § | |
| TENET HEALTHCARE CORP.; | § | |
| TENET HEALTHCARE LTD.; and | § | |
| VHS SAN ANTONIO PARTNERS, | § | |
| LLC, d/b/a VANGUARD HEALTH | § | |
| SYSTEMS d/b/a BAPTIST HEALTH | § | |
| SYSTEMS d/b/a ST. LUKE'S BAPTIST | § | |
| HOSPITAL d/b/a BAPTIST MEDICAL | § | |
| CENTER d/b/a MISSION TRAIL | § | |
| BAPTIST HOSPITAL d/b/a | § | |
| NORTHEAST BAPTIST HOSPITAL | § | |
| d/b/a NORTH CENTRAL BAPTIST | § | |
| HOSPITAL, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss, Alternative Motion for a More Definite Statement (doc. 9) filed by Defendant VHS San Antonio Partners, L.L.C.,[1] as well as an Amended Motion to Dismiss, Alternative Motion for a More Definite Statement (doc. 12) filed by Defendants Tenet Healthcare Corporation and Tenet Healthcare Ltd. Defendants seek the dismissal of Plaintiff Robert Luedecke's claims under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*, as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. For

---

[1] The full name of Defendant VHS San Antonio Partners L.L.C. is VHS San Antonio Partners L.L.C. d/b/a Vanguard Health Systems d/b/a Baptist Health Systems d/b/a St Luke Baptist Hospital d/b/a Baptist Medical Center d/b/a Mission Trail Baptist Hospital d/b/a Northeast Baptist Hospital d/b/a North Central Baptist Hospital.

the reasons stated below, Defendants' Motions are **GRANTED**.

I.

BACKGROUND[2]

This case is based on an employee's claim that his employer violated the Americans with Disabilities Act by refusing to grant his request for accommodation and by retaliating against him. Plaintiff Robert Luedecke is an anesthesiologist who became part of the medical staff at the San Antonio area hospitals of Defendant VHS San Antonio Partners, L.L.C. ("VHS") and Defendants Tenet Healthcare Corporation and Tenet Healthcare Ltd. ("Tenet")[3] in or around 1990. Doc. 1, Compl. ¶¶ 3, 13. Plaintiff performed anesthesia services when requested to do so by surgeons at Defendants' hospitals. *Id.* He was also required to respond to certain emergency room calls. *Id.* Beginning in December 2010, Plaintiff began requesting that he be removed from the emergency room on-call list due to his "chronic pain related to disc disease of the neck." *Id.* ¶¶ 11, 14. In support of his December 2010 request, Plaintiff asserted that he was burdened by "restrictions and medications prescribed by his treating physician." *Id.* ¶ 14. His request for accommodation was denied, and as a result, Plaintiff alleges that he "was forced to pay other doctors to cover his emergency room on-call schedule." *Id.*[4]

Plaintiff avers that, shortly thereafter, Defendants began "threatening to force [Plaintiff] to

---

[2] The Court draws its factual account from the allegations contained in Plaintiff's Complaint (doc. 1), as well as from the attachments and documents incorporated therein by reference. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[3] Plaintiff alleges that Tenet Hospitals Ltd. is a subsidiary of Tenet Healthcare Corporation, and that Tenet Healthcare Corporation purchased VHS on October 1, 2013. Compl. ¶ 4.

[4] Plaintiff does not indicate to whom he made this request, and he does not offer other details concerning the events of December 2010.

undergo a medical examination of their choosing because they believed he was exaggerating his condition." *Id.* ¶ 15. In March 2011, Defendants requested a letter from Plaintiff's treating doctor regarding the restrictions and medications he was prescribed, although Plaintiff alleges he had offered this information to Defendants on multiple occasions. *Id.* ¶ 16. On March 29, 2011, Plaintiff's treating doctor provided Defendants with a letter stating that the medications Plaintiff was prescribed would not prevent him from working. *Id.* Plaintiff's treating doctor further stated that "because of [Plaintiff's] impairments . . . I trust this information is sufficient to forgive [Plaintiff's] participation in night call responsibilities." *Id.* Despite this letter, Plaintiff's request for an accommodation and removal from the emergency room on-call list was again denied. *Id.*

Plaintiff alleges that in September 2011, he provided Defendants with an additional letter from his physical medicine and rehabilitation doctor concerning his condition. *Id.* ¶ 17. The letter stated in part: "With the nature of on call work being inherently unpredictable, it is my opinion that [Plaintiff] is at risk of damaging his own health by performing such work." *Id.* Following this letter, Plaintiff's request for an accommodation was denied once again. *Id.*

Plaintiff further contends that on April 13, 2012, Defendants ordered that he undergo an examination by a doctor of their choosing. *Id.* ¶ 18. Plaintiff requested to examine the policy requiring him to do so. *Id.* In response, Defendants agreed to allow Plaintiff's treating doctor to perform the examination, which Plaintiff underwent on May 22, 2012. *Id.*[5]

In June 2012, Defendants' Medical Board considered Plaintiff's request to be removed from

---

[5] Additionally, Plaintiff claims that on or about June 6, 2012, Dr. Vernon Theis, an employee of the Defendants and the Chair of the Defendants' Medical Board, disclosed Plaintiff's personnel file to someone who was not authorized to receive that information. Compl. ¶ 19.

the emergency room on-call list. *See id.* ¶ 20. Plaintiff asserts that he was not permitted to attend the Board's meeting and present arguments in support of his claim for accommodation. *Id.* ¶ 21. On June 28, 2012, Dr. Vernon Theis, as Chair of the Medical Board, wrote a letter to Plaintiff indicating that "[t]he [Medical Board] unanimously agreed that according to the evaluation (from your doctor) you are fit to practice and therefore able to make Anesthesia ER call . . . Please note that the call responsibilities at SLBH[6] are approximately 3 to 4 times per year." *Id.* ¶ 20. Following this letter, Plaintiff alleges that he "was placed back on Defendants' call schedule at a frequency of about 6 times per year." *Id.*[7] Plaintiff believes that Dr. Theis, along with other members of the Board, intentionally withheld the doctors' notes Plaintiff had provided Defendants. *Id.* ¶ 21.

A second Medical Board meeting was conducted on September 25, 2012, which Plaintiff was allowed to attend in order to present the reasons why he was unable to perform his emergency room on-call duties. *Id.* ¶ 22. At this meeting, Plaintiff again offered the September 2011 doctor's letter that he had previously provided to Defendants. *Id.* Following this meeting, in a letter dated October 12, 2012, Dr. Theis informed Plaintiff that "the [Medical Board] affirmed their prior recommendation that you be required to take Anesthesia ER Call in accordance with the Medical Staff Bylaws." *Id.*

Plaintiff then asserts that on January 1, 2013, Baptist Health Systems, one of the entities under which VHS operates, entered into a contract with a new anesthesia services provider. *Id.* ¶

---

[6] The Court infers from the pleadings that this refers to one of Defendants' hospitals where Plaintiff performed anesthesia services.

[7] Plaintiff's allegation that he "was placed back on the Defendants' call schedule" implies that he had previously been removed from this schedule. *See* Compl. ¶ 20. However, this fact has not been explicitly alleged, as Plaintiff solely describes Defendants' denial of his request for accommodation and nowhere indicates that he had been temporarily removed from the on-call list.

23. This new provider would perform the anesthesia services at all but one of the hospitals in the Baptist Health System. *Id.* Due to this development, Plaintiff's anesthesia services were now only required at this remaining Baptist Health System hospital—St. Luke's Hospital. *Id.* Plaintiff alleges that he suffered a substantial wage loss as a result. *Id.* Plaintiff maintains that on January 17, 2013, Dr. Theis informed him that the contract with the new anesthesia services provider would soon also include the remaining hospital, St. Luke's, and that therefore, Plaintiff would no longer need to seek to be removed from that hospital's on-call list. *Id.* ¶ 24.

On May 3, 2013, Plaintiff filed a charge of discrimination with the District Office of the Equal Employment Opportunity Commission (the "EEOC"), alleging that Defendants had discriminated against him based on his disability and retaliated against him due to his request for accommodation. *Id.* ¶ 25. Plaintiff also alleged that Defendants had taken "adverse action against [him]." *Id.* He then received a "Notice of Right to Sue" from the EEOC, dated January 30, 2014, which allowed him to institute a civil action within 90 days. *Id.*

Plaintiff thus filed his Complaint with this Court on April 30, 2014, alleging that Defendants violated the ADA by discriminating and retaliating against him. *See* Compl. He maintains that he suffers from a disability within the meaning of the ADA, "as his 'chronic pain related to disc disease of the neck' substantially limits his major life activities." *Id.* ¶ 11. He further asserts that Defendants had knowledge of his condition and "regarded the same if not as an actual disability then as a perceived disability." *Id.* ¶ 12. Plaintiff claims that Defendants followed a policy and practice of discrimination against him on account of his disability. *Id.* ¶ 26. These discriminatory practices included the following: (a) failing to make reasonable accommodations for Plaintiff's disability; (b) discriminating against Plaintiff in the terms, conditions, and privileges of employment; and (c)

retaliating against Plaintiff in violation of the ADA. *Id.* He further maintains Defendants acted willfully and with malice. *Id.* ¶ 26a.[8]

Plaintiff claims that he has no adequate remedy at law to correct the practices described, and he avers that he is suffering and will continue to suffer irreparable injury from Defendants' policies, practices, customs, and usage. *Id.* ¶ 27. Plaintiff thus requests past and future compensatory damages for the mental anguish, emotional pain and suffering, inconvenience, and loss of enjoyment of life that he has experienced or will experience in the future. *Id.* ¶¶ 28, 32. He also seeks statutory damages, past and future wages, compensation for his monetary losses, liquidated damages, exemplary damages, attorneys' fees, expert witness fees, costs, and interest. *Id.* ¶¶ 26a, 31.

Defendants filed their respective Motions to Dismiss, Alternative Motions for a More Definite Statement on July 20, 2014, arguing that Plaintiff fails to state ADA claims based on either (1) the denial of his request for accommodation or (2) the alleged retaliation he experienced. *See* docs. 9, VHS Mot. to Dismiss; 12, Tenet Mot. to Dismiss. Specifically, they argue that Plaintiff has not provided sufficient facts to support his allegation that he is disabled within the meaning of the ADA. *Id.* They further maintain that no claim for retaliation is stated, and that Plaintiff's claims based on events prior to July 7, 2012 are barred because the EEOC charge was not filed within the required period of time following the occurrence of the alleged events. *Id.* Plaintiff filed a single Response (doc. 18) to both Motions on July 30, 2014, and Defendants submitted their respective Replies (docs. 21, 22) on August 13, 2014. The Motions are now ripe for the Court's review.

---

[8] Plaintiff identifies this as paragraph 25 even though it followed paragraph 26. To avoid confusion with references to the actual paragraph 25, the Court refers to it as paragraph 26a.

## II.

## LEGAL STANDARD

A.  *Rule 12(b)(6) Motion to Dismiss*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.     *Rule 12(e) Motion for a More Definite Statement*

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed" when it is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "When a party moves for a more definite statement, a court must determine whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading." *Ash Grove Tex., L.P. v. City of Dallas*, No. 3:08-CV-2114-O, 2009 WL 3270821, at *7 (N.D. Tex. Oct. 9, 2009) (citing *Mitchell v. EZ Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959))."[M]otions for a more definite statement are generally disfavored," and district courts have "significant discretion" when considering them. *Id.* (internal citations and quotations omitted).

### III.

### ANALYSIS

Though Defendants submit separate motions seeking dismissal of Plaintiff's Complaint (or alternatively, a more definite statement), they raise nearly identical arguments. Defendants argue that Plaintiff's claims should be dismissed for the following reasons: (1) Plaintiff fails to allege that he is "disabled" for purposes of asserting an ADA claim; (2) Plaintiff fails to state a claim for retaliation under the ADA; and (3) Plaintiff's claims arising from events prior to July 7, 2012 are barred by the statute of limitations. *See* docs. 9, VHS Mot.; 12, Tenet Mot.[9] In response, Plaintiff

---

[9] Defendants Tenet also maintain that Plaintiff does not refer to them directly, and that "the vast majority of allegedly wrongful conduct raised in the Complaint is alleged to be factually linked to VHS." Tenet Mot. 3 n.1. Plaintiff's relationship to each Defendant remains unclear from the pleadings. Because Plaintiff discusses the actions of "Defendants" collectively and does not distinguish between them when asserting his claims, and because the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," the Court addresses the claims without attempting to discern whether Defendants Tenet or Defendant VHS is primarily linked to the conduct alleged. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at

disagrees and insists his Complaint satisfies the requirements for claims under the ADA. Doc. 18, Pl.'s Resp. The Court reviews the arguments regarding each claim, in turn, below.

A.  *Discrimination Claim Based on Disability under the ADA*

Defendants first move to dismiss Plaintiff's claims on the ground that he fails to assert sufficient facts to allege a disability under the ADA. VHS Mot. 6; Tenet Mot. 5. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity," in turn, is defined as "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). Therefore, to state a claim for discrimination on the basis of disability under the ADA, a plaintiff must allege that "(1) he has a disability; (2) he is qualified for the position in which he seeks employment; and (3) he was discriminated against because of his disability." *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir. 2011) (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). Employer discrimination includes situations where an employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A); *Griffin*, 661 F.3d at 222. However, an employer does not violate the ADA where it can "demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A).

---

205.

The ADA defines the term "disability" as follows:

> (A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment . . . .

*Id.* §§ 12102(1)(A)–(C). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The ADA Amendments Act of 2008, provides, among other things, that the term "substantially limits" is to be interpreted as broadly as possible. *Id.* §§ 12102(4)(A)–(B); *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1185 (E.D. Tex. 2011).

Therefore, in order to adequately allege a disability under the ADA, a plaintiff must plead facts giving rise to an inference that his or her impairment "substantially limits one or more 'major life activities.'" *See Hale v. King*, 642 F.3d 492, 500–01 (5th Cir. 2011). In *Hale*, the Fifth Circuit considered a plaintiff's claim that he had been discriminated against based on his disabilities, which he described as "chronic back pain, chronic Hepatitis-C, and psychiatric condition." *Id.* at 500. Though plaintiff attached medical records demonstrating that he suffered from these ailments, the court found them insufficient to support an ADA claim, as they "did not contain facts regarding the impact of [his] ailments on his ability to perform major life activities." *Id.* at 500–01. Based on the failure to allege the impact of his medical issues on his ability to perform major life activities, the court held that plaintiff "failed to state a claim for relief" under the ADA. *Id.* at 501;[10] *see also Mora*

---

[10] The Fifth Circuit in *Hale* applied the ADA's definition of "disability," as opposed to the ADAAA's expanded definition that applies to the present case. *Hale*, 642 F.3d at 499. However, this does not affect the

- 10 -

*v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 297 (5th Cir. 2012) (finding that plaintiff failed to state a claim under the ADA where she alleged a disability and stated that it impaired a major life activity, but did not specify which of her life activities was substantially limited).

Defendants argue that Plaintiff fails to allege facts to support an inference that his "chronic pain related to disc disease of the neck" limits a major life activity, and that he therefore fails to plead that he is disabled under the ADA. VHS Mot. 8; Tenet Mot. 8. In his Response, Plaintiff reiterates the contention that his disc disease limits his major life activities and argues that this is sufficient to allege the existence of a disability in the context of an ADA claim. Doc. 18, Pl.'s Resp. 9. Plaintiff states in a general manner that his alleged disability "limits his major life activity of work as well as non-work related activity," but he neither offers facts to describe this limitation, nor does he explain the nature of these "work and non-work related activit[ies]" and how they relate to his emergency room on-call duties. *Id.* Moreover, these explanations and allegations are not present in Plaintiff's Complaint and are therefore not properly considered for purposes of this Motion. *See Spivey*, 197 F.3d at 774 (the court "will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts"). Plaintiff further appears to argue that Defendants perceived him to be disabled, thus qualifying him as "disabled" as that term is defined under 42 U.S.C. § 12102(1). Pl.'s Resp. 9; *see* 42 U.S.C. § 12102(1)(C) (providing that being regarded as having an impairment that substantially limits a major life activity can constitute a disability within the meaning of the ADA).

---

court's analysis of the need to allege facts that explain how an ailment limits a major life activity. Consequently, the court's reasoning is applicable here.

Taking all of Plaintiff's well-pleaded factual allegations as true, the Court finds that he has failed to allege facts sufficient to give rise to an inference that his ailments limit a major life activity in a way that would qualify as a "disability" under the ADA. In his Complaint, Plaintiff alleges that "he has a disability within the meaning of the ADA as amended by the ADAAA as his 'chronic pain related to disc disease of the neck' substantially limits his major life activities." Compl. ¶ 11. He neither specifies what "major life activities" are limited, nor does he present any facts describing the difficulties he experiences in performing any activities.

Plaintiff's reference to his doctors' letters similarly fails to indicate that his disc disease limits one of his major life activities. Plaintiff avers that on March 29, 2011, his treating doctor provided Defendants with a letter stating that the medications Plaintiff was prescribed would *not* prevent him from working. *Id.* ¶ 16. Plaintiff's treating doctor further stated that "because of [Plaintiff's] impairments . . . I trust this information is sufficient to forgive [Plaintiff's] participation in night call responsibilities." *Id.* This letter does not indicate that Plaintiff's impairments prevent him from working; to the contrary, it states that Plaintiff can still work, despite the medications prescribed to treat his ailment. Moreover, the fact that Plaintiff's doctor assumes his letter is sufficient to excuse Plaintiff from certain job requirements is conclusory in nature; it suggests that Defendants should accommodate Plaintiff but does not offer facts to support any reason for doing so.

Plaintiff relies on another doctor's letter, submitted to Defendants in September 2011, which states: "With the nature of on call work being inherently unpredictable, it is my opinion that [Plaintiff] is at risk of damaging his own health by performing such work." *Id.* ¶ 17. This statement, though possibly indicating the precarious nature of Plaintiff's health, merely offers a speculation or

fear of future ailment; it does not suggest that Plaintiff suffered from a disability at the time of his request for accommodation.

Plaintiff's argument that he qualifies as having a disability because Defendants perceived him as being disabled is similarly unpersuasive. Though a perceived disability qualifies as a "disability" within the meaning of 42 U.S.C. § 12102(1), Plaintiff's ADA claim is entirely based on the contention that he was *not* perceived as having a disability and was accordingly denied an accommodation. The Complaint discusses at length Defendants' scepticism toward Plaintiff's allegation that an ailment prevented him from being scheduled for on-call duty. *See* Compl. ¶¶ 15–18. His brief remark that he was also discriminated against due to his perceived disability contradicts the basis of all his remaining allegations and is insufficient to state a claim for discrimination under the ADA.

Based on the finding that Plaintiff has not alleged sufficient facts to support his assertion that he is "disabled," the Court concludes that Plaintiff fails to state a claim for discrimination under the ADA and accordingly **GRANTS** Defendants' Motions to Dismiss with respect to this issue.

B.   *Retaliation Claim under the ADA*

Defendants next argue that Plaintiff's claim for retaliation in violation of the ADA is without merit. Section 12203(a) of the ADA prohibits retaliation, providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a).

To establish a claim for retaliation under the ADA, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a

causal connection between the protected act and the adverse action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). An adverse employment action is any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). To establish a causal link between the protected conduct and the adverse employment action, a plaintiff must show that "the employer's decision . . . was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998).

Defendants move to dismiss Plaintiff's claim for retaliation on the ground that he has failed to provide even a formulaic recitation of the elements of such a claim. VHS Mot. 9; Tenet Mot. 9. Specifically, they argue that "it is unknown what activity, if any, [Plaintiff] contends is retaliatory," as he only offers the two conclusory statements that "Defendants took adverse action against [him]" and that Defendants' "discriminatory practices and policies include . . . [r]etaliating against Plaintiff in violation of the Act." *Id.* (quoting Compl. ¶¶ 25, 26). Defendants further assert that Plaintiff has made no claims that he suffered an adverse employment action. VHS Mot. 10; Tenet Mot. 9. Lastly, they maintain that even if Plaintiff had alleged an adverse employment action, his claim should nonetheless be dismissed because he fails to indicate a causal connection between his alleged protected activity and any adverse employment action. VHS Mot. 10; Tenet Mot. 10. Defendants note that the alleged conduct Plaintiff complains of occurred prior to his filing of the EEOC charge on May 3, 2012. VHS Mot. 11; Tenet Mot. 10. Therefore, they argue, Plaintiff cannot assert that Defendants retaliated against him for filing an EEOC charge. *Id.*

In his Response, Plaintiff explains that the adverse employment actions he suffered were the denials of his requests for accommodation as well as Defendants' request that he undergo a medical examination to evaluate the basis for his demand to be removed from the on-call schedule. Pl.'s Resp. 11–12. He further argues that the short lapse of time between the allegedly protected activity and the adverse action can demonstrate a causal connection between the two; he indicates that the allegedly adverse actions he suffered occurred shortly after his request for accommodation, thus establishing that the two were causally linked. *Id.* at 14.

Regarding the second element of a retaliation claim, which requires a showing of an adverse action against Plaintiff, the Court finds that Plaintiff has neglected to allege any adverse conduct that would be actionable as an ADA retaliation claim. Plaintiff appears to argue that the adverse action he suffered was the denial of his request for accommodation. However, this action is not "adverse," as that term is defined in the context of retaliation claims, but is rather the initial action that forms the basis of Plaintiff's subsequent protected activity against Defendants. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Thus, Plaintiff confounds his claim for retaliation with his claim that he should have been accommodated. Nowhere does he offer separate allegations demonstrating that Defendants took an adverse action in response to his complaints or EEOC filings.

Plaintiff's Complaint does include a brief section describing a reduced demand for his anesthesia services beginning in 2013. *See* Compl. ¶¶ 23–24. However, Plaintiff does not allege that this was a form of retaliatory conduct or even an adverse action, but rather explains that it was due to the fact that Defendants had entered into a contract with a new anesthesia services provider on January 1, 2013. *Id.* ¶ 23. Plaintiff's allegations demonstrate that this was not a narrow employment decision that only affected him, but that it was instead a structural change that altered all anesthesia

services at Defendants' hospitals. *Id.* Moreover, Plaintiff has not alleged that he was terminated, reprimanded, or otherwise adversely affected.

With respect to the third element of retaliation—whether the adverse action is causally linked to the protected activity—the Court agrees with Defendants and finds that Plaintiff has omitted facts that could lead to such an inference. The short lapse of time that Plaintiff believes connects his protected activity to the allegedly adverse action is insufficient to establish causation. His request for accommodation was followed relatively quickly by the denial of this request, but a denial of accommodation is not the adverse result of a protected activity. Rather, a request and its denial are merely the initial interactions between employee and employer that could form the basis of an EEOC charge or other complaint, which, *in turn*, could lead the employer to take adverse actions against the employee. There is, in fact, a causal connection between a request for accommodation and a denial of that request: the denial is by definition the result of a prior request, as there would be nothing to deny in the absence of a request. However, the denial of accommodation is not the type of adverse action that constitutes retaliatory conduct, and therefore, the causal connection between the request and the denial is not a basis for a retaliation claim.

Having found that Plaintiff has failed to allege facts to support a claim for retaliation under the ADA, the Court **GRANTS** Defendants' Motions to Dismiss regarding this matter.

C.   *Timeliness of the Claims*

Lastly, Defendants argue that any claims based on events occurring prior to July 7, 2012 are barred because Plaintiff filed his EEOC charge more than 300 days after these events. Having determined that Plaintiff's pleadings are insufficient to state claims for discrimination and retaliation under the ADA, the Court finds no need to reach the issue of the claims' timeliness. Although the

Court declines to discuss which of Plaintiff's claims, had they been properly pleaded, would be timely, this is not to suggest that Defendants' arguments on this matter are without merit. Therefore, should Plaintiff satisfy the pleading requirements in a subsequent amended complaint, the Court will consider at length whether his claims were timely filed.

## IV.

## CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss (docs. 9, 12) are hereby **GRANTED** with respect to Plaintiff's claim for discrimination and retaliation under the ADA. Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d. 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (stating that "a court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted") (internal alterations omitted). Because this Order is the Court's first review of Plaintiff Luedecke's allegations, the Court concludes that he should be given the opportunity to overcome the deficiencies in his pleadings.

If Plaintiff is able to replead and address the grounds for dismissal stated herein, he should do so within thirty (30) days of the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds for dismissal stated in this Order. Should Plaintiff replead, Defendants are hereby granted leave to

file a response to Plaintiff's synopsis. Any response shall not exceed ten (10) pages and must be filed within fourteen (14) calendar days of the repleading. No further briefing will be permitted.

Because Plaintiff is given an opportunity to overcome pleading deficiencies, Defendants' respective Motions for a More Definite Statement are **DENIED** as moot.

**SO ORDERED.**

**SIGNED: January 5, 2015.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE