**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ROBERT LUEDECKE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **vs.** | § | **3:14-cv-01582-B** |
| **TENET HEALTHCARE CORPORATION,** | § | |
| **TENET HEALTHCARE LTD,** | § | |
| **VHS SAN ANTONIO PARTNERS, LLC** | § | |
| **d/b/a VANGUARD HEALTH SYSTEMS** | § | |
| **d/b/a BAPTIST HEALTH SYSTEMS** | § | |
| **d/b/a ST. LUKES BAPTIST HOSPITAL** | § | |
| **d/b/a BAPTIST MEDICAL CENTER** | § | |
| **d/b/a MISSION TRAIL BAPTIST** | § | |
| **HOSPITAL d/b/a NORTHEAST BAPTIST** | § | |
| **HOSPITAL d/b/a NORTH CENTRAL** | § | |
| **BAPTIST HOSPITAL** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S COMPLAINT

COMES NOW, Robert Luedecke, Plaintiff, (hereinafter referred to as "Luedecke") complaining of Defendants, Tenet Healthcare Corporation, Tenet Healthcare Ltd., and VHS San Antonio Partners, LLC d/b/a Vanguard Health Services d/b/a Baptist Health System d/b/a St. Luke's Baptist Hospital d/b/a Baptist Medical Center d/b/a Mission Trail Baptist Hospital d/b/a Northeast Baptist Hospital d/b/a North Central Baptist Hospital (hereinafter referred to as "Defendants"), and would respectfully show unto the Court as follows:

On information and belief, the Defendants followed a policy and practice of discrimination against Plaintiff because of his disability ("disc disease of his neck"), in

violation of the Americans with Disabilities as Amended U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation Act of 1973; and Chapter 21 of the Texas Labor Code. The discriminatory practices and policies include, but are not limited to the following:

(a)     Failing to make reasonable accommodations for Plaintiff's disability;

(b)     Discriminating against Plaintiff in the terms, conditions and privileges of employment; and

(c)     Retaliating against Plaintiff in violation of the Acts.

## I. JURISDICTION AND VENUE

1.     Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331 and 28 § U.S.C. 1343(a).

2.     The Defendants' Corporate Offices and Principal Offices in Texas are located in Dallas, Dallas County, the State of Texas. Pursuant to 28 U.S.C.A. § 1391 (b)(1)Venue is proper in the Dallas Division of the Northern District of the State of Texas.

## II. PARTIES

3.     Plaintiff, Luedecke is a male citizen of the United States and a resident of Helotes, Bexar County, Texas.  Luedecke is an anesthesiologist who performed services for Tenet Healthcare Corporation, Tenet Healthcare Ltd., and VHS San Antonio Partners, LLC d/b/a Vanguard Health Services d/b/a Baptist Health System hospitals in the San Antonio, Texas area and was a member of the Defendants medical staff. Surgeons at the Defendants hospitals would contact Plaintiff and request and schedule his services as an anesthesiologist. As a physician working at the Defendants hospitals Plaintiff was required

to take emergency room call until he reached the age of sixty (60) to be eligible to provide his services in the Defendants' hospitals.

4.      VHS San Antonio Partners, LLC d/b/a Vanguard Health Services d/b/a Baptist Health System d/b/a St. Luke's Baptist Hospital Baptist Health System d/b/a St. Luke's Baptist Hospital d/b/a Baptist Medical Center d/b/a Mission Trail Baptist Hospital d/b/a Northeast Baptist Hospital d/b/a North Central Baptist Hospital was purchased by Vanguard Health Systems in 2003. Vanguard Health Systems was purchased by Tenet Healthcare Corporation on October 1, 2013. Tenet Hospitals Ltd. is a subsidiary of Tenet Healthcare Corporation and operates the hospitals operated by Tenet Healthcare Corporation in Texas.

5.      Baptist Health System is/was owned/operated by Vanguard Health Systems. Both Baptist Health Systems and Vanguard participated in the discrimination against Luedecke. Tenet Healthcare System later acquired Vanguard Health System and has assumed all liabilities. Tenet Healthcare System participated in the discrimination against Luedecke by failing to ensure that he received, written notification by Baptist Health System that Luedecke had been removed from the emergency room call schedule because of his disability. Tenet Healthcare System also participated in acts of discrimination by Baptist Health Systems and Vanguard Health Systems, before its acquisition of Vanguard Health Systems because Tenet Healthcare System had the power to correct acts committed by Baptists Health System and Vanguard and failed to do so.

6.      Defendant, Tenet Healthcare Corporation is a Domestic For Profit Corporation which regularly conducts business in the State of Texas and has been served and appeared herein.

7.      Defendant, Tenet Healthcare Ltd. is a Domestic Limited Partnership which regularly conducts business in the State of Texas and has been served and appeared herein.

8.      Defendant, VHS San Antonio Partners, LLC d/b/a Vanguard Health Services d/b/a Baptist Health System d/b/a St. Luke's Baptist Hospital Baptist Health System d/b/a St. Luke's Baptist Hospital d/b/a Baptist Medical Center d/b/a Mission Trail Baptist Hospital d/b/a Northeast Baptist Hospital d/b/a North Central Baptist Hospital is a foreign corporation which regularly conducts business in the State of Texas and has been served and appeared herein.

9.      All of the Defendants are "employers" as defined by the ADA and by Chapter 21 of the Texas Labor Code, and are recipients of federal financial assistance (Including Medicare and Medicaid funding) and thus subject to Section 504 of the Rehabilitation Act of 1973.

### III.  ADMINISTRATIVE PROCEDURES

10.      Plaintiff filed a charge of employment discrimination against Defendants with the District Office of the Equal Employment Opportunity Commission within 300 days of the last discriminatory act.  Plaintiff received a "Notice of Right to Sue" concerning the charge by letter from the EEOC, dated January 30, 2014, entitling him to institute a civil action within 90 days of the date of the receipt of said notice. This action is timely filed.

PLAINTIFF'S COMPLAINT - Page 4

## IV. <u>FACTS AND CAUSES OF ACTION</u>

11.     This suit is authorized and instituted pursuant to the  Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq.* ["ADA"] as amended by the ADA Amendments Act ("ADAAA") Public Law 110-325; Section 504; and Texas state law. This is a proceeding for legal and equitable relief available to secure the rights of the Plaintiff under these statutes. The complaint seeks declaratory relief pursuant to 28 U.S.C. §§2201, 2202.

12.     Luedecke has disabilities within the meaning of the ADA, as amended by the ADAAA.  His impairments include thoracic outlet syndrome, degenerative cervical disc disease, lumbar disc disease, cervical spondylosis and myofascial pain syndrome which substantially limit his major life activities. He is therefore a member of the protected groups within the meaning of the ADA as amended, Section 504, and Chapter 21 of the Texas Labor Code.

13.     Luedecke's impairments substantially limit his major life activities in the following ways:

A.     Luedecke's neck impairments restrict him from lifting more than fifteen (15) pounds. Luedecke also requires assistance when grocery shopping, and, for example, he can no longer lift and pour a glass of milk from a gallon milk container with either of his hands/arms.  Luedecke's impairment substantially limits in him in the major life activity of lifting, thus qualifying Luedecke as having a disability under the relevant laws.

B.     Luedecke's cervical disc disease causes pain if he exceeds certain physical limits. After working a period of time (usually 4-6 hours), Luedecke experiences muscle spasms in his neck and shoulders that is painful and interfere with his ability to concentrate. Luedecke's neck impairment substantially limits him in the major life activity

of concentrating and thinking, thus qualifying Luedecke as having a disability under the relevant laws.

C.      Luedecke's disability also substantially limits his ability to bend his neck up and down, which substantially limits his field of view and sight lines because he is unable to rotate his neck up and down as a normal functioning person would be able to absent cervical disc disease. Luedecke's limited field of vision and sight lines limits his downward gaze to view obstacles while he is walking. Also, Luedecke experiences limitations looking at the ceiling. Luedecke's neck impairment therefore substantially limits his ability to see and walk, which are major life activities, thus qualifying Luedecke as having a disability under the relevant law.

D.      Luedecke's disability also substantially limits his ability to perform manual tasks because he has limited flexibility and decreased muscle strength in his neck. Luedecke's neck impairment also causes muscle spasms in his neck and shoulders when he bends his neck too much.

E.      Luedecke's disability also substantially limits his ability to write because of decreased blood flow to both of his arms as a result of thoracic outlet syndrome. Also the muscles and nerves of both of his arms and hands fatigue and are very sensitive to pressure making it difficult for him to write. To write Luedecke must rest the weight of his right forearm on top of something that provides padding for his forearm and elbow to prevent his hand from going numb while writing. Luedecke's neck impairment also substantially limits his ability to write which is a major life activity.

F.      Luedecke's disc disease is episodic, and in its active/aggravated state it substantially limits his ability to sleep, which is a major life activity. When Luedecke's disc disease is active/aggravated it interferes with his sleep to such an extent that his ability to sleep is substantially less than the ability of most people to sleep.

G.      As a result of his disability Luedecke must wear a jacket and gloves when exposed to temperatures below mid-fifties due to the decreased amount of blood flow to his arms and hands. Luedecke has sustained mild frostbite to both hands after one hour of exposure to low temperatures. Also he cannot sit or stand for long periods of time because it aggravates his lumbar disc problem and causes pain in his feet. Luedecke cannot stand or sit for more than two (2) hours before his condition becomes aggravated, and that this is much less that the ability of most people to sit or stand. Also, when opening doors Luedecke is forced to use both hands to evenly distribute the forces to avoid injuring his lower back and neck. Without mitigating measures and accommodations, Luedecke is substantially limited in the major life activities of pulling compared to most people. All of the limitations mentioned above substantially limit Luedecke in the major life activity of musculoskeletal function.

H.      As a result of his disability Luedecke has been prescribed and takes medication. The prescriptions have side effects that cause Luedecke to experience dizziness which make it difficult for Luedecke to walk or drive. The prescriptions cause Luedecke to experience episodic dizziness and loss of balance. His balance difficulties in low-light situations are compounded due to his inability to look downward. Going down stairs can be a particularly difficult task for Luedecke to perform with sure footing. Walking and driving are major life activities, thus qualifying Luedecke as having a disability. Luedecke's impairments must now be assessed

without regard to mitigating measures. Among the mitigating measures Luedecke uses are pain medications, and without them, he would be even more significantly restricted because of the pain.

I.       Without the positional self-accommodation that Luedecke must use when writing, he would not be able write at all or for only few minutes at a time without his condition becoming aggravated.

14.     Luedecke was diagnosed with his disability in 2005 and has continually suffered from and received medical treatment as a result of his disability and therefore, Luedecke has a history of a disability.

15.     The Defendants had knowledge of Luedecke's condition and Defendants regarded the same if not as an actual disability then as a perceived disability.

16.     Luedecke began performing services at the Defendants hospitals in the San Antonio, Texas area as a member of the Defendants medical staff on or around 1990.

17.     In December 2010 Luedecke made a request to be removed from the Defendants emergency room on-call list due to the restrictions and medications prescribed by his treating doctor. Luedecke's request was denied by the Defendants and as a result Luedecke was forced to pay other doctors to cover his emergency room on-call schedule.

18.     Shortly thereafter the Defendants began threatening to force Luedecke to undergo a medical examination of their choosing because they believed he was exaggerating his condition.

19.     In March 2011 the Defendants requested a letter from Luedecke's treating doctor regarding the restrictions and medications he was prescribed, although Luedecke

had offered this information to the Defendants on multiple occasions. On March 29, 2011 Luedecke's treating doctor provided the Defendants with a letter stating that the medications Luedecke was prescribed would not prevent him from working. Luedecke's treating doctor went on to state, "because of Dr. Luedecke's impairments…. I trust this information is sufficient to forgive Dr. Luedecke's participation in night call responsibilities." Despite the letter provided to the Defendants by his treating doctor, Luedecke's request for an accommodation was again denied.

20.    Luedecke also provided the Defendants with a letter from his Physical Medicine and Rehabilitation Doctor in September 2011 concerning his condition/restrictions that stated in part, "With the nature of on call work being inherently unpredictable, it is my opinion that Dr. Luedecke is at risk of damaging his own health by performing such work." Luedecke's request for an accommodation was again denied.

21.    On April 13, 2012 the Defendants ordered Luedecke to undergo an examination by a doctor of their choosing, which was nearly fourteen (14) months after the initial demand. In response Luedecke requested to see the policy with such a requirement. In response the Defendants agreed to allow Luedecke's treating doctor to perform the examination. On May 22, 2012 Luedecke underwent the examination. No explanation for the long lapse of time between the initial demand and Luedecke ultimately being examined was ever provided to Luedecke.  If the evaluation was truly to evaluate Luedecke's medical condition and ability to safely treat patients as alleged by the Defendants, then why did they wait over fourteen months to actually make him undergo the evaluation? Clearly because the Defendant wanted to Luedecke to feel threatened about complaining about the

denial of his accommodations and his internal complaints and external complaints filed with the EEOC/TWCRRD about the Defendants retaliatory and discriminatory treatment.

22.     On or about June 6, 2012 Dr. Vernon Theis, an employee of the Defendants and the Chair of the Defendants Medical Board disclosed Luedecke's personnel file to someone who was not authorized to receive that information.

23.     On June 28, 2012 Dr. Vernon Theis, Chair of the Defendants Medical Board stated in a letter to Dr. Luedecke following his request for accommodation that was requested in a meeting of the board in June 2012, "The MEB unanimously agreed that according to the evaluation (from your doctor) you are fit to practice and therefore able to take Anesthesia ER call...Please note that the call responsibilities at SLBH are approximately 3 to 4 times per year." Following this letter Luedecke was placed back on the Defendants call schedule at a frequency of about 6 times per year in clear retaliation.

24.     Luedecke had requested to attend this meeting and present his position before the board and his request was denied. Luedecke' believes that Dr. Theis along with other members of the board intentionally withheld the doctors' notes Luedecke had provided the Defendants.

25.     Then on October 12, 2012, Dr. Vernon Theis, wrote in a letter to Luedecke, following his request for accommodation that was considered in a meeting by the board in June 2012, "the MEB reaffirmed their prior recommendation that you be required to take Anesthesia ER Call in accordance with the Medical Staff Bylaws." Luedecke was allowed to attend the second MEB meeting on September 25, 2012 and was allowed to present a brief summary of why he was not able to take call and to answer questions from the MEB

members. Luedecke had previously supplied his September 20, 2011 doctor's note to the Defendants but he took another copy to the meeting and requested that the MEB members be given a copy of the doctor's note. Luedecke is unsure if the MEB board members were ever provided a copy of the doctor's note or ever viewed the doctor's note.

26.     Then on January 1, 2013 Baptist Health System contracted with Star Anesthesia ("Star") to provide anesthesia services to all of the hospitals in the Baptist Health System excluding St. Luke's hospital. As a result Luedecke has had to decline the requests by surgeons to work at those hospitals and most surgeons at those hospitals have refrained from contacting Luedecke at this point because they know he can no longer provide services at those hospitals, which has resulted in substantial wage loss to Luedecke.

27.     When Baptist Heath Systems contracted with Star Anesthesia, Luedecke approached Star about providing some services for them. Luedecke was told by Star that he could do work at the four (4) Baptist Health System hospitals only if he was a full-time employee of Star. In conversations with other doctors Luedecke was informed that this was not accurate and that any anesthesiologist not employed full-time by Star could still work with Star, but they would do the scheduling. Luedecke also has knowledge of some anesthesiologists not employed by Star who were allowed to continue working in the Baptist Health System hospitals after the contract between Baptists Health Systems and Star.

28.     Baptist Health System issued a statement after contracting with Star that all anesthesiologists would be governed by the Star contract, but what actually happened is

that the contract allowed Star (in conjunction with Baptist Health System) to decide which anesthesiologists could still provide services to Baptist Health System Hospitals and which anesthesiologists would no longer be allowed to provide service to the hospitals. Luedecke was told he would no longer be allowed to provide services to the four Baptist Health System hospitals who had entered into the contract with Star. Luedecke is unaware of any other anesthesiologists that previously provided services to the four Baptists Health Systems hospitals, other than himself, that are no longer allowed to work at these hospitals since the contract with Star. Luedecke has knowledge of some anesthesiologists that were allowed to continue working at Baptists Health Systems by subcontracting with Star. Luedecke believes his request to continue to be allowed to provide services to the four Baptists Health Systems hospitals who entered into the contract with Star was denied because of his requests for an accommodations and internal and external (EEOC) complaints about the Defendants treatment of doctors with disabilities.

29.     Then on January 17, 2013 Dr. Vernon Theis told Luedecke he might as well give up his efforts to be removed from St. Luke's Hospital's on-call schedule because of his disability, because the contract to provide anesthesia services to the Baptist Health System with Star Anesthesia was soon going to include St. Luke's hospital as well. Sometime later after the Defendants again denied Luedecke's request for an accommodation (to be removed from night call), Dr. Theis told Luedecke that he (Theiss) was incorrect and the contract with Star Anesthesia did not cover St. Luke's Hospital.

30.     On May 3, 2013 Luedecke filed a charge of discrimination with EEOC alleging that the Defendants had discriminated and retaliated against him based on his disability and request for accommodation. The Defendants took adverse action against Luedecke.

31.     Following Luedecke's complaints of discrimination the Defendants took adverse actions against Luedecke by placing him back on the night call schedule and increasing the frequency of the amount of night call Luedecke had to perform when compared to similarly situated anesthesiologists employed by the Defendant. A change to one's work schedule may make little difference to some similarly situated anesthesiologists but to Luedecke the change was enormous and critical considering his disability and limitations. Also the Defendants took adverse action against Luedecke following his complaints of discrimination by reducing the number of Defendant hospitals that Plaintiff could provide his services to from five hospitals to only one hospital. This caused great economic hardship to Luedecke because he went from being able to provide his anesthesia services in five of Defendants hospital to one. As a result Luedecke suffered economic damages.

32.     On or about June 6, 2012, Dr. Vernon Theis, a hospital official, spoke with one of the surgeons with whom Luedecke regularly worked and Dr. Theis told this surgeon that the MEB was investigating Luedecke's ability to work in the Baptist Hospital System. Following this conversation, the number of surgeons calling Luedecke for work decreased noticeably causing Luedecke economic hardships and disparaged his reputation in the medical community. The damage done to Ludecke's reputation is unknown at this time but have led to economic damages and could lead to further economic damages in the future.

## V.      DISABILITY DISCRIMINATION

33.      On information and belief, the Defendants discrimination against Plaintiff because of his (actual, record of, and regarded as) disability in violation of the ADA as amended, 42 U.S.C. §§ 12101 et seq.; Section 504 of the Rehabilitation Act of 1973; and Chapter 21 of the Texas Labor Code. The discriminatory practices and policies include, but are not limited to the following:

(a)      Failing to make reasonable accommodations for Plaintiff's disability;

(b)      Discriminating against Plaintiff in the terms, conditions and privileges of employment; and

(c)      Retaliating against Plaintiff in violation of the Act.

34.      Plaintiff has suffered compensatory damages as result of the Defendants discriminatory treatment of him. Plaintiff would further show that the Defendants conduct was done willfully and with malice and that he is entitled to exemplary damages.

35.      Plaintiff has no plain, adequate, or complete remedy at law to correct the practices described herein, and this suit for injunctive relief is his only means for securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendants policies, practices, customs and usage set forth herein.

36.      Defendants conduct toward Plaintiff caused him mental anguish and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory damages.

37.      The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

38.    All conditions precedent to the filing of this action have occurred or have been fulfilled.

## VI.  **DAMAGES**

39.    Plaintiff seeks statutory damages, back pay, front pay and or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, interest and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation Act of 1973; and Chapter 21 of the Texas Labor Code.

40.    Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, exemplary damages and such other and further relief to which Plaintiff is entitled because of the actions and or omissions complained of above.

## VII.  **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Defendants be cited to appear herein, and, on hearing hereof, the Court grant the following:

1.    Lost earnings and employee benefits in the past and future;

2.    Compensatory damages in the past and future (which may include mental anguish and other nonpecuniary losses);

3.    Exemplary damages ;

4.    Reinstatement to Plaintiff's former position of employment;

5.    Reasonable and necessary attorney's fees;

6.    Litigation expenses, costs and prejudgment interest; and

7.      Such other and further relief, both legal and equitable, to which Plaintiff may

be justly entitled.


Respectfully submitted,


/s/ John E. Wall, Jr.
John E. Wall, Jr.
State Bar No. 20756750
**LAW OFFICES OF JOHN E. WALL, JR.**
5728 Prospect Avenue, Suite 2001
Dallas, Texas 75206-7284
Phone:  214-887-0100
Fax:  214-887-0173
***Attorney for Plaintiff***


**JURY REQUEST**

Plaintiff respectfully requests a jury trial.

## CERTIFICATE OF SERVICE

On January 16, 2015, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

Laura O'Hara                    ***Via eFile***
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202


Francine W. Breckenridge        ***Via eFile***
STRASBURGER & PRICE, LLP
720 Brazos Street, Suite 700
Austin, Texas 78701


Blaine A. Holbrook              ***Via eFile***
EVANS & ROWE, PC
10101 Reunion Place Blvd., Suite 900
San Antonio, Texas 78216


Monica A. Velazquez             ***Via eFile***
Strasburger & Price, LLP
2801 Network Blvd. Suite 600
Frisco, Texas 75034-1872

                                */s/ John E. Wall, Jr.*
                                John E. Wall, Jr.