UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT LUEDECKE, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-1582-B |
| | § | |
| TENET HEALTHCARE CORP.; | § | |
| TENET HEALTHCARE LTD.; and | § | |
| VHS SAN ANTONIO PARTNERS, | § | |
| LLC, d/b/a VANGUARD HEALTH | § | |
| SYSTEMS d/b/a BAPTIST HEALTH | § | |
| SYSTEMS d/b/a ST. LUKE'S BAPTIST | § | |
| HOSPITAL d/b/a BAPTIST MEDICAL | § | |
| CENTER d/b/a MISSION TRAIL | § | |
| BAPTIST HOSPITAL d/b/a | § | |
| NORTHEAST BAPTIST HOSPITAL | § | |
| d/b/a NORTH CENTRAL BAPTIST | § | |
| HOSPITAL, | § | |
| | § | |
|   Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

     The subject of this Memorandum Opinion and Order is Plaintiff Robert Luedecke's Amended Complaint (doc. 27), which the Court granted Plaintiff leave to file after dismissing his Original Complaint for failing to state a claim upon which relief could be granted. *See* doc. 24, Memorandum Opinion and Order dated January 5, 2015 ("Order of Dismissal") 17–18. The question now before the Court is whether Plaintiff's Amended Complaint contains sufficient new factual allegations to overcome the deficiencies detailed in the Court's Order of Dismissal. For the reasons stated below, the Court concludes that it does. Accordingly, the parties are **ORDERED** to submit to the Court a proposed, revised scheduling order **no later than Tuesday, July 7, 2015.**

# I.

# BACKGROUND[1]

This lawsuit is based on an employee's claim that his employer violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, (the "ADA") by discriminating against him in refusing to grant his request for accommodation and by retaliating against him. In its Order of Dismissal, the Court recounted the factual background of this case in detail, such that it need not do so again here. Order of Dismissal 2–6. To summarize, Plaintiff Robert Luedecke is an anesthesiologist who performed anesthesia services at various hospitals in the San Antonio, Texas area for Defendant VHS San Antonio Partners, L.L.C. ("VHS")[2] and Defendants Tenet Healthcare Corporation and TH Healthcare, Ltd. f/k/a Tenet Healthcare Ltd. ("Tenet")[3] (collectively, "Defendants"). Doc. 27, Am. Compl. ¶ 3. Plaintiff's responsibilities included performing anesthesia services when requested to do so by surgeons at Defendants' hospitals and responding to certain emergency room calls. *Id.*

Beginning in December 2010, Plaintiff began requesting that he be removed from the emergency room on-call list due to impairments in his neck, which he alleges substantially limited many of his major life activities. *Id.* ¶¶ 12–13, 17. Plaintiff alleges that Defendants refused to offer the requested accommodation and, due to Plaintiff's complaints of discrimination, retaliated against

---

[1] The Court draws its factual account from the allegations contained in Plaintiff's Amended Complaint (doc. 27), as well as from the attachments and documents incorporated therein by reference. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[2] The full name of Defendant VHS San Antonio Partners L.L.C. is VHS San Antonio Partners L.L.C. d/b/a Vanguard Health Systems d/b/a Baptist Health Systems d/b/a St Luke Baptist Hospital d/b/a Baptist Medical Center d/b/a Mission Trail Baptist Hospital d/b/a Northeast Baptist Hospital d/b/a North Central Baptist Hospital.

[3] Although Tenet addresses Plaintiff's arguments and claims, it maintains that it had no role in the alleged conduct at issue and is not a proper party to this litigation. *See* Doc. 30, Tenet Resp. 2 n.3.

him by increasing his on-call responsibilities. *Id.* ¶¶ 17–23, 31.

Based on these events, Plaintiff filed a charge of discrimination with the District Office of the Equal Employment Opportunity Commission (the "EEOC") on May 3, 2013, alleging that Defendants had discriminated against him based on his disability and had retaliated against him due to his request for accommodation. *Id.* ¶ 30. Plaintiff then received a "Notice of Right to Sue" from the EEOC, dated January 30, 2014, which allowed him to institute a civil action within 90 days. *Id.* ¶ 10.

Plaintiff subsequently filed the present lawsuit against Defendants on April 30, 2014, claiming that Defendants had discriminated and retaliated against him in violation of the ADA, 42 U.S.C. §§ 12101 *et seq.*, as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. *See* doc. 1, Orig. Compl. On July 10, 2014, Defendants filed their respective Motions to Dismiss Plaintiff's claims, which the Court granted in its Order of Dismissal. *See* docs. 9, VHS Mot. to Dismiss; 12, Tenet Mot. to Dismiss; Order of Dismissal 1. However, because this was the Court's first review of Plaintiff's claims, the Court granted Plaintiff the opportunity to amend his pleadings so as to overcome the grounds for dismissal stated in the Court's Order. Order of Dismissal 17–18.

In accordance with the Court's instructions, Plaintiff filed an Amended Complaint on January 16, 2015, along with a ten-page synopsis explaining how his amendments address and overcome the deficiencies detailed in the Court's Order of Dismissal. Am. Compl.; doc. 27-1, Synopsis. On January 30, 2015, VHS and Tenet filed their respective responses in opposition to Plaintiff's Amended Complaint and Synopsis in which they argue that, despite the added factual allegations, his claims fail to overcome the deficiencies detailed in the Court's Order of Dismissal. Docs. 28, VHS Resp.; 30 Tenet Resp. As such, Plaintiff's Amended Complaint is ripe for the Court's review.

## II.

## LEGAL STANDARD

The Court reviews Plaintiff's Amended Complaint under the same Rule 12(b)(6) standard that it applied when reviewing Plaintiff's Original Complaint to determine whether he has pleaded sufficient additional facts to overcome the deficiencies outlined in the Court's Order of Dismissal.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the

complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

In his Amended Complaint, Plaintiff again asserts claims against Defendants for discrimination and retaliation under the ADA, offering additional factual allegations concerning his medical condition and its impact on his major life activities. In evaluating this repleading, the Court must determine whether Plaintiff has presented sufficient allegations to overcome the Court's grounds for dismissing these claims in its Order of Dismissal.

Though Defendants submit separate responses to Plaintiff's Amended Complaint and Synopsis, they raise nearly identical arguments. Defendants argue that Plaintiff's claims remain deficient. With respect to Plaintiff's discrimination claim under the ADA, Defendants argue that: (1) Plaintiff fails to allege that any limitations on his major life activities relate to his duties as an anesthesiologist; and (2) Plaintiff is no longer a qualified individual with a disability. In addition, Defendants insist that Plaintiff fails to state a claim for retaliation under the ADA because: (1) Plaintiff fails to show he suffered an adverse employment action; and (2) Plaintiff fails to allege a causal connection between a protected activity and an adverse action. Docs. 28, VHS Mot.; 30, Tenet Mot. The Court reviews the parties' respective arguments regarding each claim, in turn, below.

A.  *Discrimination Claim under the ADA*

The Court first evaluates the sufficiency of Plaintiff's discrimination claim under the ADA. As previously explained, to state a claim for discrimination on the basis of disability under the ADA, a plaintiff must allege that "(1) he has a disability; (2) he is qualified for the position in which he

seeks employment; and (3) he was discriminated against because of his disability." *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir. 2011) (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). Employer discrimination includes situations where an employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A); *Griffin*, 661 F.3d at 222. However, an employer does not violate the ADA where it can "demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A).

The ADA defines the term "disability" as follows:

> (A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment . . . .

*Id.* §§ 12102(1)(A)–(C). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The ADA Amendments Act of 2008, provides, among other things, that the term "substantially limits" is to be interpreted as broadly as possible. *Id.* §§ 12102(4)(A)–(B); *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1185 (E.D. Tex. 2011).

In its Order of Dismissal, the Court concluded that Plaintiff "failed to allege facts sufficient to give rise to an inference that his ailments limit a major life activity in a way that would qualify as a 'disability' under the ADA." Order of Dismissal 12. The Court acknowledged Plaintiff's allegation that "he has a disability within the meaning of the ADA . . . as his 'chronic pain related to disc

disease of the neck' substantially limits his major life activities." *Id.* (quoting Orig. Compl. ¶ 11). However, the Court dismissed Plaintiff's claim because Plaintiff "neither specifie[d] what 'major life activities' are limited, nor d[id] he present any facts describing the difficulties he experiences in performing any activities." *Id.* (citing Orig. Compl. ¶ 11).

In his Amended Complaint, however, Plaintiff presents the factual support that had been previously missing from his allegations. First, whereas his complaint originally limited his impairments to "disc disease of the neck," Plaintiff now alleges that his impairments include thoracic outlet syndrome, degenerative cervical disc disease, lumbar disc disease, cervical spondylosis, and myofascial pain syndrome. Am. Compl. ¶ 12. Plaintiff then proceeds to explain how his impairments, as well as the pain caused by such impairments, limit his ability to perform the following activities: (1) lifting objects weighing more than fifteen pounds; (2) concentrating and thinking; (3) bending his neck up and down; (4) seeing, caused by his limited field of view due to his inability to move his neck; (5) walking, caused by his limited field of view due to his inability to move his neck; (6) performing manual tasks; (7) writing; (8) sleeping; (9) sitting and standing for long periods of time; and (10) pulling and other similar physical functions. *Id.* ¶ 13. In addition, Plaintiff notes that the medications he takes for his impairments limit his ability to walk and drive. *Id.* Plaintiff provides ample, detailed, and specific factual allegations explaining how exactly his impairments lead to the substantial limitation of the activities listed above.

After reviewing Plaintiff's additional allegations, the Court concludes that they are sufficient to allow the inference that Plaintiff suffers from "a physical . . . impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Plaintiff has listed a multitude of life activities that are considered "major life activities" within the meaning of the ADA, and he has

further alleged sufficient facts demonstrating how his impairments have substantially limited these activities. *Id.* § 12102(2)(A); *see also id.* §§ 12102(4)(A)–(B); *Norton*, 786 F. Supp. 2d at 1185 (providing that the term "substantially limits" is to be interpreted as broadly as possible). Moreover, Defendants do not object to the sufficiency of Plaintiff's Amended Complaint with respect to the claim that his physical health impairments have substantially limited his major life activities. *See* VHS Mot. 2–5; Tenet Mot. 2–5. Accordingly, the Court concludes that these allegations are sufficient, at this early stage in the litigation, to assert that Plaintiff has a disability within the meaning of the ADA.

Defendants do, however, raise two additional grounds for the dismissal of Plaintiff's ADA discrimination claim. First, although they do not dispute that Plaintiff has alleged facts to indicate that his major life activities have been substantially limited, they contend that the pleadings are nevertheless insufficient, as they "fail[] to allege that any purported limitations on [Plaintiff's] major life activities *relate to his duties as an anesthesiologist.*" VHS Mot. 2; Tenet Mot. 2 (emphasis added). Defendants thus argue—without presenting any authority in support—that Plaintiff is required to establish that the major life activities that have been substantially limited as a result of his impairments are related to his work responsibilities as an anesthesiologist. *Id.* Such an argument is deficient for two reasons. First, a plaintiff asserting a discrimination claim under the ADA is not required to demonstrate that the major life activities that are substantially limited *relate to employment duties*; instead, courts need only determine "whether [plaintiff] has an 'impairment,' . . . whether the activity on which he relies is a 'major life activity,' and, if so, whether his impairment 'substantially limits' that major life activity." *See Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654–56 (5th Cir. 2003) (finding that eating is a major life activity, and making no inquiry as to whether this life activity was

related to plaintiff's work responsibilities at a manufacturing plant). Indeed, the ADA provides a non-exhaustive list of major life activities, which include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A); *see also* 29 C.F.R. § 1630.2(i); *Picard v. St. Tammy Parish Hosp.*, 423 F. App'x 467, 471 (5th Cir. 2011); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009). The emphasis on "major *life* activities" precludes a distinction between activities that directly affect employment duties and those that do not, as it is understood that an activity that is a "major life activity" affects most aspects of one's life, which in turn affects one's work performance. Second, even if such a connection between major life activities and work duties were required, the Court notes that, based on Plaintiff's allegations, it would be able to draw the reasonable inference that a substantial limitation of Plaintiff's ability to (1) lift objects; (2) concentrate and think; (3) bend his neck up and down; (4) see; (5) walk; (6) perform manual tasks; (7) write; (8) sleep; (9) sit and stand; and (10) pull would prevent him from performing his duties as an anesthesiologist working at several hospitals. For these reasons, the Court concludes that Defendants' argument that Plaintiff must clarify how the limitation of his major life activities relate to his work duties is without merit.[4]

---

[4] Defendants asserts that the Court's Order of Dismissal required Plaintiff to explain how his impairments affected his work responsibilities. VHS Mot. 2; Tenet Mot. 2. However, the Court created no such requirement in its discussion of the law or in its dismissal of Plaintiff's action. Instead, in evaluating the lack of context offered in either Plaintiff's Original Complaint or in his Response to Defendants' Motions to Dismiss, the Court merely noted that "Plaintiff states in a general manner that his alleged disability 'limits his major life activity of work as well as non-work related activity,' but he neither offers facts to describe this limitation, nor does he explain the nature of these 'work and non-work related activit[ies]' and how they relate to his emergency room on-call duties." Order of Dismissal 11.

Defendants next assert that, even if Plaintiff pleads sufficient facts to allege that he is disabled, his ADA claim nonetheless should be dismissed because he is no longer a "qualified employee," as is required to establish a discrimination claim under the ADA. VHS Mot. 3–5; Tenet Mot. 3–5. A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Chevron Phillips Chem. Co., LP*, 570 F.3d at 614. Defendants argue that, in explaining how his major life activities are substantially limited and in requesting an accommodation in the form of relief from on-call responsibilities, Plaintiff is effectively conceding that he is not qualified for the position of anesthesiologist, as he appears unable to perform the position's essential functions. VHS Mot. 4–5; Tenet Mot. 4. In raising these arguments, Defendants place Plaintiff at an impasse; they effectively claim that, in requesting relief from certain on-call responsibilities and in describing his impairments so as to demonstrate his disability, Plaintiff admits—according to Defendants—that he is unable to report to work at all requested times and thus is not "qualified" within the meaning of the ADA.

At this early stage of the litigation, the Court is unable to dismiss this action based on Defendants' allegation that Plaintiff is not qualified because he cannot perform his essential work functions. First, even though the ability to appear for work is an essential element for most positions, Plaintiff here has in no way indicated that he is unable to appear for work or that he has exhibited attendance issues. *See Green v. Medco Health Solutions of Tex., LLC*, 947 F. Supp. 2d 712, 721 (N.D. Tex. 2013) (noting that "[a]n ability to appear for work is an essential element of most jobs."). In fact, Plaintiff alleges that he has been performing anesthesia services as a member of Defendants' medical staff since approximately 1990, which suggests that his qualification for his employment has

not been placed into question. Most importantly, however, addressing Defendants' arguments with respect to the on-call responsibilities would require identifying the "essential functions" of Plaintiff's position as well as determining whether Plaintiff could perform these functions with or without an accommodation. The Court is unable to engage in such an inquiry based on the parties' pleadings alone, and therefore cannot resolve this matter at this initial phase of the litigation. *See Gober v. Frankel Family Trust*, 537 F. App'x 518, 520–22 (5th Cir. 2013) (affirming *summary judgment* in favor of an employer who terminated his employee based on evidence that the employee could not perform the essential on-call functions of his employment, and was thus not qualified for the position).

Based on a review of Plaintiff's new allegations presented in his Amended Complaint, the Court concludes that Plaintiff has overcome the deficiencies listed in the Order of Dismissal and has thus offered sufficient facts to state a claim for discrimination under the ADA.

B.    *Retaliation Claim under the ADA*

Next, the Court examines the sufficiency of Plaintiff's claim for retaliation under the ADA. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). Therefore, to establish a claim for retaliation under the ADA, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected act and the adverse action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). An adverse employment action is any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

(2006) (citations omitted); *Hammond v. Jacobs Field Servs.*, 499 F. App'x 377, 383 (5th Cir. 2012); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). To establish a causal link between the protected conduct and the adverse employment action, a plaintiff must show that "the employer's decision . . . was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998).

In its Order of Dismissal, the Court concluded that Plaintiff had "neglected to allege any adverse conduct that would be actionable as an ADA retaliation claim." Order of Dismissal 15. The Court observed that Plaintiff argued that "the adverse action he suffered was the denial of his request for accommodation," but concluded that "this action is not 'adverse,' as that term is defined in the context of retaliation claims, but is rather the initial action that forms the basis of Plaintiff's subsequent protected activity against Defendants." *Id.* The Court noted that "Plaintiff confound[ed] his claim for retaliation with his claim that he should have been accommodated," and that he failed to "offer separate allegations demonstrating that Defendants took an adverse action in response to his complaints or EEOC filings." *Id.*

Although Plaintiff's Amended Complaint retains some of the deficient allegations described in the Court's Order of Dismissal, it also provides new allegations that present factual support for his ADA retaliation claim. In particular, Plaintiff alleges that, on June 28, 2012, he was denied his request for accommodation and was informed that he would not be relieved of his on-call responsibilities, which were to number three to four times per year. Am. Compl. ¶ 23. However, Plaintiff argues that the frequency of his on-call responsibilities was increased to "about 6 per year in clear retaliation." *Id.* Thus, Plaintiff asserts that he suffered an adverse action in retaliation for his request for accommodation. Elsewhere in his Amended Complaint, Plaintiff adds that Defendants

increased his night on-call responsibilities also in retaliation for his charge of discrimination with the EEOC, which he filed on May 3, 2013. *Id.* ¶ 31. He explains that "[a] change to one's work schedule may make little difference to some similarly situated anesthesiologists," but that to him, "the change was enormous and critical considering his disability and limitations." *Id.*

In their Response, Defendants fail to specifically address these new allegations, instead generally asserting that Plaintiff "still fails to show that: (1) he suffered an adverse employment action; and (2) there is a causal connection between a protected activity and an adverse action." VHS Mot. 5; 30, Tenet Mot. 5.

While Plaintiff appears to argue that the adverse increase in his on-call responsibilities occurred in retaliation for both his request for accommodation and his EEOC charge, his allegations are not conflicting, and they clearly assert that Defendants took a specific adverse action against him because of his protected activity. Accordingly, the Court concludes that Plaintiff has alleged sufficient facts to allow a reasonable inference that he was retaliated against as a result of his request for accommodation, complaints, and/or EEOC charge.

The Court thus turns to Plaintiff's additional basis for his retaliation claim. As in his Original Complaint, Plaintiff again asserts that Defendants took an adverse action against him "by reducing the number of Defendant hospitals that Plaintiff could provide his services to from five hospitals to only one hospital." Am. Compl. ¶ 31. Although Plaintiff avers that this occurred after his "complaint of discrimination," he explains that these events developed following Baptist Health System Hospitals' entrance into a new contract with Star Anesthesia—not a party to this suit—on January 1, 2013. *Id.* ¶ 26. Plaintiff maintains that, as a result of this contract, he became ineligible to perform anesthesia services for four of the hospitals which previously employed him. *Id.* ¶ 28. In contrast to

his previous filings, Plaintiff's Amended Complaint alleges that some anesthesiologists in fact were able to continue working for these hospitals despite the new contract with Star Anesthesia. *Id.*

Even if this change could be construed as an adverse employment action taken by Defendants—an issue that remains unclear based on the pleadings—Plaintiff's Amended Complaint offers no allegations suggesting a causal connection between Plaintiff's protected activity and such adverse action. First, the reduction of hospitals at which Plaintiff could perform services occurred following the formation of the new contract with Star Anesthesia on January 1, 2013. *Id.* ¶ 23. However, Plaintiff did not file his discrimination charge until May 3, 2013. *Id.* ¶ 30. Therefore, this action could not have been carried out in retaliation for the discrimination charge. Second, even if the adverse action were alleged to have occurred following Plaintiff's other complaints to Defendants, there are insufficient allegations to indicate that this was causally connected to such complaints; Plaintiff himself explains that the reduction in eligible hospitals occurred as a result of the new contract with Star Anesthesia, an entity that has not otherwise been mentioned in this lawsuit. *Id.* ¶ 28. Although Plaintiff elsewhere suggests that Defendants took this adverse action "following his complaints of discrimination," such an allegation, read in the context of the new Star Anesthesia contract—whose formation had no relation to Plaintiff's dispute with Defendants—does not permit a reasonable inference that the two events were causally connected. *Id.* ¶ 31. Therefore, Plaintiff has failed to state a viable retaliation claim under the ADA based on the alleged reduction of the number of hospitals at which he could perform anesthesia services.

In sum, Plaintiff's Amended Complaint has alleged sufficient facts to support a claim of retaliation under the ADA based on the increase in the number of on-call responsibilities he allegedly suffered. However, he has been unable to provide sufficient factual allegations to assert a

claim of retaliation based on the decrease in the number of hospitals at which he could perform anesthesia services.

## IV.

## CONCLUSION

For the reasons stated above, Plaintiff Robert Luedecke's Amended Complaint (doc. 27) has overcome the pleading deficiencies discussed in the Court's Order of Dismissal. Therefore, Plaintiff may proceed on his claims for discrimination and retaliation under the ADA, subject to the issues noted above. To move this matter toward a resolution, the Court **ORDERS** the parties to submit a proposed, revised scheduling order **no later than Tuesday, July 7, 2015**.

**SO ORDERED.**

**SIGNED: June 23, 2015.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE